**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
In re:

|  |  |
|---|---|
| CHU H. KWON, et al., | Case No. 19-44290 (ESS) |
|  | Case No. 19-44263 (ESS) |
| Debtors | Case No. 19-44264 (ESS) |
|  | Case No. 19-44265 (ESS) |
|  | (Jointly Administered) |

-------------------------------------------------------------X
Chu H. Kwon,
4811 Associates LLC
5505 Associates LLC
5507 Associates LLC

|  |  |  |
|---|---|---|
| Plaintiffs, | Adversary Case No. |  |

v.

5th Avenue Mixed Use LLC
Maverick Real Estate Partner LLC
David Aviram
John Does 1-10

Defendants.
-------------------------------------------------------------X

### VERIFIED RICO COMPLAINT—TRIAL BY JURY DEMANDED

Plaintiffs Chu H. Kwon, 4811 Associates LLC 5505 Associates LLC  5507 Associates LLC,

through  the undersigned complaining of the defendants alleges as follows:

### PRELIMINARY STATEMENT

It is more than axiomatic that right of redemption is inseparably connected with a mortgage.

It cannot be waived or revoked. Here the Note assignee, 5th Avenue Mixed Use LLC, an ad hock

created racketeering arm of Maverick Real Estate Partner LLC (Maverick) with its usual scheme

of "Loan to Own" ran its devious  decree of a default interest to completely devour the equity in

the property and to own the Debtors' real properties  through various tools of law--deliberately

enhanced the amount owed and deterred the debtors and its agents from paying off  their

mortgages.  Maverick and other defendants used wrongful means to take over the bankruptcy

1

process and property in question. The Defendants used wrongful means to achieve a wrongful objective. This case is about the wrongful use of an otherwise valid power that converts permissible actions into extortion.  This case is about how Maverick muscled its way unlawfully to a place of dominance, taking over loan, unlawfully denying the payoff of the mortgages and then in furtherance of the scheme to take over process of the bankruptcy court, in using the court system as an enterprise in furtherance of its scheme to unlawful takeover of the properties.

## I.    JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction herein pursuant to 28 U.S.C § § 1331, 1334 in that they arise under United States Statute 18 U.S.C. § 1964(c). This Court has supplemental jurisdiction over the remaining Claims for Relief pursuant to 28 U.S.C. § 1367(a), in that they arise from the same nucleus of operative facts as the Claims for Relief over which this Court has original jurisdiction and as such are so related to those Claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.       This Court has personal jurisdiction over each of the Defendants pursuant to 18 U.S.C. § 1965(a).

## I.      PARTIES

**The Plaintiffs**

3.      Chu. H. Kwon the plaintiff is a New York City resident and operating member/owner of the 4811 Associates LLC, 5505 Associates LLC and, 5507 Associates LLC.

4.      4811 Associates LLC is a New York state limited liability company owning real property 4811, 5th Avenue, Brooklyn, New York ("4811 Associates").

5.      5505 Associates LLC is a New York state limited liability company owning real property 5505, 5th Avenue, Brooklyn, New York ("5505 Associates").

6.      5507 Associates LLC New York state limited liability company owning real property 5507, 5th Avenue, Brooklyn, New York ("5507 Associates).

**The Defendants**

7.      5th Avenue Mixed Use LLC (Mixed Use LLC) is New York state limited liability company registered by Maverick for the purposes of acquisition of the Real Properties located at 4811, 5th Avenue, Brooklyn, New York,   5505, 5th Avenue, Brooklyn, New York, 5507, 5th Avenue, Brooklyn, New York.

8.      Maverick Real Estate Partner LLC (Maverick) is the master operator of the enterprise of owning financing or owning real estate. Maverick professes to acquires loans, mechanic's liens, and judgments secured by real estate and have a reputation of masters of *Loan to Own* transactions.

9.      Upon information and belief, David Aviram (Aviram)is a New York state resident and is one of the director of Maverick and directing the affairs of the enterprise.

10.     John Does 1-10 are unknown agents and/or coconspirators whose identities will be provided when they become known.

11.     Each Defendant herein is the agent of the other and each Defendant is a coconspirator with the other relating to the acts alleged herein.

## II.     STATEMENT OF FACTS

12.     Mr. Kwon is the sole operating member of the debtors 4811 Associate, 5505 Associates and 5507 Associates, in these jointly administered Chapter 11 cases (the "Chapter 11 Cases"). These Debtors are owners of real properties located 4811, 5th Avenue, Brooklyn, New York ("4811 Associates");  5505, 5th Avenue, Brooklyn, New York ("5505 Associates");  and 5507, 5th Avenue, Brooklyn ("5507 Associates) all in the state of New York (the "Real Properties"). Mr.

Kwon received the Real Properties from his father, who had preserved and maintained them very assiduously.

13.    On or about October 11,  2018 Mr. Kwon took out a loan with Emerald Creek Capital LLC (Emerald). The amount was for $4.9 million dollars (the "Loan") and it was secured by Real Properties. The loan with Emerald Creek LLC, a 12 months loan was to pay off a previous loan for $4.1 million dollars. and with the remainder of the proceeds was to be used to reorganize the finances of the debtors. Mr. Kwon wanted to refinance this loan to a traditional one  and develop them or sell the Real Properties in case the traditional financing is not available.

14.    Around two weeks before the closing of the Loan, Mr, Kwon met with the managing partner of the Emrald, Mark Bahari (Bahari). Bahari came to the Real Properties' site. After having done his inspection of the properties, Bahari and Mr. Kwon reached an agreement.  Bahari and Mr. Kwon discussed the exit strategy from the loan, wherein Mr. Kwon made it clear that he would want to change the loan to a traditional one with another lender or with a strategic partner. At the closing, as per the understanding, Mr. Kwon did not execute the estoppel certificate for two tenants, 5507 Dorian Jewelry located at 5507, 5th Avenue, Brooklyn and Conchita Baker located at 4811, 5th Avenue, Brooklyn, New York.   There was no lease pertaining to tenant 5507 Dorian Jewelry. With Conchita Bakery, Mr. Kwon was in the process of negotiating extension of the lease. Also, Mr. Kwon wanted to sell the Real Properties for profit and he further had the impression that the prospective buyer would want to have vacant or stores with no leases. Emerald and Mr. Kwon had the understanding as long as the payments are made, there would not be any default.

15.    Meanwhile, Mr. Kwon had engaged the services Elli Shillian (Shillian), a real estate broker, to market the Real Properties.  Mr. Kwon met a few potential buyers and corresponded with some others.

16.     Around February 22, 2019, Emerald contacted Mr. Kwon to tell him that he was short of

$2823.86 for February 2019 mortgage payment.  On March 5, 2019, Emerald once again contacted

Mr. Kwon.  Soon thereafter Mr. Kwon wired the stated sum of $2823.86.  No where did Emerald

raise the issue of estoppel certificates, as it was agreed that since the Real Properties have to be

refinanced or sold very soon, it would not be necessary to have the same.

17.     In March of 2019, Mr. Kwon received a billing statement from Emerald for $35, 823.86

due on April 1, 2019. In this billing for the month of March 2019, the statement reflected the

following:

>**Past Due Amount………………….....$0.00**
>**Current Payment Amount……………$35,823.08**
>**Trust/Escrow Payments……………….$0.0**
>**Other Pavements………………………...$0.00**
>**Deferred Charges………………………..$0.00**
>**Minimum Payment Due………………$35,823.08**
>**Payment Due Date……………………   04/01/2019**
>**Late Charge Due After 4/5/2019……...$3,582.31**
>**Maximum Loan Amount………………$4,900.000.00**
>**Current Principal Balance……………..$4,900,000.00**
>**Reserve Balance………………………..$0.00**
>**Impound Balance………………………..$46,924.41**
>**Interest Rate…………………………….$8.490%**
>**Average Daily Balance…………………$4,900,000.00**

Mr. Kwon could not make the said payment.

18.      On April 17, 2019, Mr. Kwon received an offer regarding the Real Properties for a sum of

7.3 million.

19.     On April 18, 2019, Emerald noticed Mr. Kwon, via email and certified mail with a letter

with bold figures: Notice of Default,  the *default under the Note* with the following notation:

**Borrower failed to make the required interest payment of $35,823.08 due April 1, 2019.**

20.    On April 22, 2019 Bahari contacted Mr. Kwon to discuss the loan, wherein Mr. Kwon told Bahari that he is actively looking to sell the Real Properties.  Also, Emerald sent the following billing statement for the month of May 2019:

Past Due Amount…………………\$35,823.08
Current Payment Amount  +…….\$38,499.81
Trust/Escrow Payments……………\$0.0
Other Payements…………………....\$0.00
Deferred Charges……………………..\$0.00
Minimum Payment Due…………….\$74,322.89
Payment Due Date……………………05/01/2019
Late Charge Due After 5/5/2019………\$3,466.75
Maximum Loan Amount……………….\$4,900.000.00
Current Principal Balance……………\$4,900,000.00
Reserve Balance……………………….. \$0.00
Impound Balance………………………\$32,9672.27
Interest Rate…………………………… \$8.490%
Average Daily Balance…………………\$4,900,000.00

This was last statement received on this account.

21.    On May 1, 2019, Emerald sent an email to Mr. Kwon that if Mr. Kwon pays the arrears of these two months, March and April of 2019, he would be in good standing with the lender, Emerald.  Emerald never declared Mr. Kwon in default before this loan, as Mr. Kwon was not in default.

22.    On May 22, 2019, Mr. Kwon emailed Bahari that he had several buyers who would be willing to close expeditiously on the purchase of the Real Properties.  Mr. Bahari responded that they are willing to accommodate Mr. Kwon until May 17, 2019.    Bahari thereafter sent a Forbearance Agreement which delineated the grounds for default as nonpayment for the said months. Mr. Kwon did not sign the Forbearance Agreement.

23.    Mr. Kwon meanwhile had three other offers for purchase or a joint venture in developing the Real Properties. On May 6th 2019, an offer of \$7,000,000.00 from Friedman - Roth Realty

Services; on May 8th  2019  an offer of $7,100,000.00 from Ramin Ahdoot; and on May 14th 2019 an offer with the highest being $7,300,000.00 from West Bridge RE.

24.    Around June 11, 2019, New York city enacted a new law, Housing Stability and Tenant Protect Act, of 2019, which adversely impacted the values of the real estate and including the Real Properties.

25.    On June 12, 2019, Mr. Kwon received a certified mail from Maverick that they have purchased the Debtors' loan from Emerald and that further that I was in default.

26.    On June 14, 2019, Mr. Kwon received another certified mail from Maverick that Maverick would auction off the shares of the Debtors limited liability Companies on July 15, 2019.

27.    During this week, Mr. Kwon had shortlisted two potential investors, Odeon Group and Ramin Abhoot, for pay off the Loan and developing the Real Properties. Shillian and Mr. Kwon had meeting with Ramin Abhoot wherein Ramin Abhoot stated that since he knew Maverick, he would negotiate with them the pay off amount.

28.    Immediately after the foregoing meeting, around June 20, 2019, Ramin Abhoot asked Maverick for the payoff on behalf of the Debtors. Maverick took more than two weeks to provide the pay off, which was listed to be for a sum of 5.9 million, (the Pay Off)

29    This Pay-off by Maverick was false. In fact, the real Payoff was less than $5,200,000.

30.    As a result of the false Pay-off, the potential buyer Ramin Abhoot walked away.

31.    In order to not to lose the deal, on July 12, 2019 Mr. Kwon desperately tried to plead his case to Maverick and offered them $5.5millon (even though it was higher than the real amount owed), for that is the highest the Ramin Abhoot and Mr. Kwon were comfortable with.  Maverick did not respond.

32.     Maverick wanted to take over the Real Properties and it used false intimidating figures to keep the potential buyers away. It also made the redemption next to impossible.

33.     In June 2019 - Gideon Asset Management (Gideon) and Mr. Kwon entered into a verbal agreement to enter into a joint venture agreement at a valuation of $6M. Mr. Kwon had disclosed to Gideon that a predatory lender had acquired his loans for roughly $5M and were making demands for $5.9 million.

34.     On July 11th, 2019 - Gideon made a written offer to Mr. Jason Leibowitz and Maverick Capital for $5.25M. The offer was rejected and not countered.

35.     During the in-between days, Gideon had requested a counter twice with no avail and decided to send in an increased offer. On July 22nd, 2019 – Gideon made another offer at 5.5M to acquire the loans, again the offer was rejected, and Mr. Leibowitz had indicated the firm is no longer interested in entertaining a sale of the notes

36.     Gideon followed up on August 20th, 2019 requesting if there was any change or interest again in selling the loans. The email went with no response from Mr. Leibowitz. Again on October 3, 2019 Gideon AM asked Mr. Leibowitz if there was interest in selling the loans and again the email went with no response.  Again, Gideon on behalf of Mr. Kwon pleaded that they want to pay off the loan, Maverick did not respond.

37.     It was not in Maverick interest to provide a proper pay off and or as they wanted to take over the Real Properties. Maverick with dishonest intention inflated the amount of Pay-off solely to extort monies that were contrary to the understanding with the original Lender and the Note. Maverick wanted to take over the Real Properties and thus used wrongful means way to make the redemption impossible.   By not allowing the redemption or payment on the loan on the right amount Maverick made sure that they have a constant stream of default income of default interest

rate. Maverick knew about the equity in the property as the property had been valued for more than 9.4 million dollars. Maverick had an agenda, turned it into a scheme and it had no better way to accomplish its unlawful objective other than through turning the Bankruptcy Court into an enterprise.

### *Enterprise*

38.    Defendant Mixed Use, Maverick and Aviram are each person under 18 U.S.C. § 1961(3).

39.    The relationship between Defendants Mixed Use, Maverick and Aviram and Does is (hereafter the Enterprise I.) constitutes an *Association in Fact* enterprise under 18 U.S.C. § 1961 (4) and the persons controlling or directing the affairs of Enterprise I have engaged in activities or a pattern or practice of conspiracy and racketeering activity in violation of 18 U.S.C. § 1962 et seq.

40.    Alternatively, the Defendants have made this Court, *United States Bankruptcy Court* ((hereafter the Enterprise II.) an enterprise under 18 U.S.C. § 1961(4) and the Defendants persons acting with the necessary dishonest intention, acquired and continues to main an interest in the Enterprise II by filing a proof of claim of false claim, filing a chapter 11 Plan based on false inflated numbers and acquiring control over the process by defeating the Real Properties redemptions by wrongful means thus engaged in activities or pattern or practice of conspiracy and racketeering activity in violation of 18 U.S.C. § 1962 et seq.

41.    Enterprises I has an ongoing business aside and apart from the racketeering acts alleged herein in that they were involved in the operation of the *Association in Fact Enterprise.*

42.    The Defendants maintained and exercised control or acquired interest and or maintained interest over the Enterprises I and II alleged. These Enterprises are engaged in or affecting interstate or foreign commerce. The Plaintiffs suffered injury to their interests in the business and property by reason of the Defendants conduct or participate in the conduct of Enterprise I's affairs

through a pattern of complained of racketeering activities and as well as or in the alternative by the acquisition or maintenance of the interest in, or control over, the Enterprise II.

### *Racketeering Activities*

43.    While Mr. Kwon was desperately to save his properties, he made joint venture partner, *supra* ¶¶27-36, to contact Maverick for the pay off. Maverick not wanting to lose the control and have the properties for themselves first deceptively inflated the sums owed and secondly refused to deal with the payments offered.  Mr. Kwon could not extricate himself out of the situation. He could not redeem the Real Properties.  Maverick used improper figures of the loan to keep the potential buyers of the Real Properties away.

44.    The Defendants in furtherance of their scheme to take over the Real Properties on August 8, 2019 filed a motion for a setting up a last date to file proofs of claims against the estate.  Avrim in furtherance of the continuing control of the Enterprise and gain footing with the Enterprise II filed a proof of Claim for a sum of $5,990,681.99 on December 18, 2019 under the penalty of perjury, which the Defendant knew had false figures in it. Said demand was deliberately made to keep the pay off at the highest possible number so that the Plaintiffs could not redeem their property, as Defendants had schemed to take over the same.

45.    The Defendants January 14, 2020 in furtherance of their goal to take over the Real Properties filed a disclosure statement and a chapter 11 Plan.   In the proposed Plan, in furtherance of the scheme to take over, the following plan was proposed:

> The Disbursing Agent shall execute any and all documents necessary to effectuate the transfer of title of the Property to the Plan Proponent at the closing of the Sale, including without limitation a Bargain and Sale Deed with Covenants, a Bill of Sale and all required transfer tax returns and A CRIS documents, and such Sale shall not be taxed under any law imposing a stamp or similar tax as provided for in § 1146(a) of the Bankruptcy Code. Pursuant to § 1123(a)(5)(D) of the Bankruptcy Code, the Property shall be sold to

> the Plan Proponent, or its nominee, free and clear of any and all Liens, Claims (including, but not limited to, claims of residential and commercial tenants), Encumbrances, Interests, bills, or charges whatsoever, other than the usual and customary utility easements, if any, appearing as of record or as preserved in the Plan (subject only to the existing Mortgage and residential tenancies evidenced by a valid written lease).

Chapter11 Plan dated January 14, 2020. And the Real Properties were to "vest in the Plan Proponent, or its nominee, free and clear of all Liens, Claims and encumbrances."

46.    Upon objection and concerns, the Defendants revised their Chapter 11 Plan and now proposed to sell the Real Properties through a broker of their choice through bidding procedure, however the sale is structured in a manner which is engineered to make only one outcome, i.e. the Defendants take over the Real Properties.  With its grossly and falsely inflated amount of debt, the Defendants ride the saddle of the process,

> "Notwithstanding anything herein to the contrary. the Proponent [the Defendants] is a Qualified Bidder and may credit bid up to the amount of its claim for the Properties without the need for any deposit or fulfilling the other requirements for a Potential Bidder to be a Qualifying Bidder."

Amended Disclosure Statements, Bidding Procedure, p. 34. Also, the bidder will have to pay 5% of the amount of successful bid on top of amount bid. The defendants credit bid is set to drown any bidding and it is set up to take over the Real Properties.  Had the Defendants not misled the Plaintiffs about the amount of monies owed and not falsely inflated the numbers to the joint venture partners of Mr. Kwon, the real properties would have been redeemed in time.  Each of the foregoing submissions and filing of the false Proof of Claim constituted the knowing and fraudulent making of a false oath, declaration, certificate, verification, in or in relation to any case under the Bankruptcy Code, within the meaning of 18 U.S.C. §§ 152(2) or 152(3), besides use of unlawful means prohibited under 18 U.S.C. §1951.

47.    Between June 2019 and the present, each of the Defendants engaged in a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1961(5), consisting of the predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1961(1)(D) described in aforesaid paragraphs, additional predicate acts set forth below, and other predicate acts to be identified after further investigation and discovery herein.

48.    Each of the Defendants engaged in two or more predicate acts of racketeering, and each committed at least one such act of racketeering after the effective date of RICO. The predicate acts of racketeering activity were related in that they were committed for the purpose of (1) taking over unlawfully the Real Properties of Mr. Kwon, (2) falsely inflating the payoff amount solely to drive away any competitor, like Gideon, (3) falsely inflating the payoff so that the redemption of the loans or the Real Properties becomes impossible to achieve, (4) thereby depriving  Mr. Kwon of his ownership of the Real Properties. The Defendants provided misleading information to the proposed joint partner, to Mr. Kwon and filed the same misleading information with the Bankruptcy Court.   These acts, and others to be identified after further investigation and discovery herein, shared a common or related purpose, goal, result, participants, victim, and method of commission.  These predicate acts or offenses are part of an ongoing Defendants regular way of doing business.[1]

48a.    The scheme or artifice to rob Mr. Kwon of his Real Propeties is delineated above. In addition to the predicate acts of mail and wire fraud set forth therein and in furtherance of the scheme or artifice to defraud Kwon, the Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures,

---

[1] See Atlantic IIIst LLC, Case No. 19-73137 (EDNY)(REG) (case pending chapter 11 confirmation by Debtor), Defendants flaunting the state court judgement to take over the real properties  and or the bankruptcy process, despite knowledge that such judgement is based on false figures.

and sounds, in violation of 18 U.S.C. § 1343, and also caused matters and things to be placed in a

post office or authorized depository or deposited or caused to be deposited matters or things to be

sent or delivered by a private or commercial interstate carrier, in violation of 18 U.S.C. § 1341,

including, but are not limited to, the following:

    a. the filing of the Proof of Claim with the Court registry;
    b. the filing of the Chapter 11 Plans and Disclosure Statements; and
    c. the different objections and letters and paperwork filed on the docket with the bankruptcy court.

Upon information and belief, each of the foregoing affidavits or declarations under penalty of

perjury or Proof of Claims etc. were transmitted by interstate wire, by United States mail, and/or

by private interstate commercial carrier.

## COUNT I
## RICO--VIOLATION OF 18 U.S.C. § 1962 (c)

49.     Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

50.    At all relevant times, each of the Defendants was, and is, a person within the

meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

51.    The relationship described as Enterprise I constitutes an association-in-fact enterprise

under 18 U.S.C. § 1961 (4). From the date of the acquisition of the Loan from Emerald, June 12,

2019 (said date being approximate and inclusive) and continuing to the present, Defendants and

others *supra*, have constituted an association-in-fact enterprise within the meaning of 18 U.S.C.

§§ 1961(4) and 1962(c).

52.    The Enterprise I is structured through (1) the formal corporate ownership relationships

among Defendants, 5th Avenue Mixed Use LLC, Maverick Real Estate Partner LLC, David

Aviram and other John Does.

53.    At all relevant times, each of the Defendants was, and is, a person that exists separate and

distinct from the Enterprise I.

54.    The Enterprise I was and is engaged in, and its activities affected, interstate and foreign commerce as demonstrated in in the foregoing paragraphs.

55.    Each of the Defendants engaged in a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1961(5) consisting of the predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1)(B) (Hobbs Act) and 18 U.S.C. § 1961(1)(D) described in the foregoing paragraphs  and others to be identified after further investigation and discovery herein, *supra*. Each of the Defendants engaged in two or more predicate acts of racketeering, and each committed at least one such act of racketeering after the effective date of RICO.

56.    The predicate acts of racketeering activity were related in that they were committed for the purpose of (1) taking over unlawfully the Real Properties of Mr. Kwon, (2) falsely inflating the payoff amount solely to drive away any competitor, like Gideon, (3) falsely inflating the payoff so that the redemption of the loans or the Real Properties becomes impossible to achieve, (4) thereby depriving  Mr. Kwon of his ownership of the Real Properties. These acts, and others to be identified after further investigation and discovery herein, shared a common or related purpose, goal, result, participants, victim, and method of commission.

57.    Through such patterns of racketeering activity, each of the Defendants conducted or participated, directly or indirectly, in the conduct of the affairs of the Enterprise I in violation of 18 U.S.C. § 1962(c).

58.    As a direct and proximate result of RICO violations of 18 U.S.C. § 1962(c) by the Defendants, the Plaintiffs have been injured in its business or property, suffering damages in an amount to be determined at trial.

59.    The damages to Mr. Kwon and his companies include, but are not limited to, loss of equities exceeding $4 million dollars when the first payoff was demanded, and other income that the

plaintiffs would have earned in the absence of Defendants' unlawful conduct; other lost business opportunities; and attorneys' fees and costs, including attorneys' fees and costs associated with exposing and pursuing redress for Defendants' criminal activities.

60.    Pursuant to the civil remedy provisions of 18 U.S.C. § 1964(c), the Plaintiffs are thereby entitled to recover treble damages, together with the costs of this suit and reasonable attorneys' fees.

## COUNT II
## RICO--VIOLATION OF 18 U.S.C. § 1962 (b)

61.    Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

62.    At all relevant times, each of the Defendants was, and is, a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(b).

63.    The Defendants by falsely inflating the payoff figure making the loan and Real Properties irredeemable, took control of the Real Properties through its lien enforcement solely to take over the Real Properties. In furtherance of the scheme to take over, it filed an inflated proof of claim and controlled the voting class. By rendering payoff of the loans impossible, and then filing the proof of claim with false number, it acquired and now maintain an interest of the Bankruptcy Court through above stated racketeering activities.

64.    Each of the Defendants engaged in a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1961(5) consisting of the predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1961(1)(D) described in the foregoing paragraphs and others to be identified after further investigation and discovery herein, *supra*. Each of the Defendants engaged in two or more predicate acts of racketeering, and each committed at least one such act of racketeering after the effective date of RICO.

65.     The Plaintiffs suffered injury as a result of this take over of the bankruptcy process by that which was made possible only by unlawfully depriving the plaintiffs of the lawful redemption of these Real Properties.  Such control over the bankruptcy process, would not have been possible if the Defendants had operated with honest means. Such unlawful take over the Enterprise II renders it impossible for the plaintiffs to propose a Chapter 11 Plan, as the Defendants have metastasized the loan to such an extent that it has devoured the inbuilt equity and unabated interest and unlawfully placed late payments etc. have only worked unilaterally to vest control of the bankruptcy process only with the Defendants.

66.     The persons described above and others associated with or employed by those persons were employed by or associated with Enterprise II.

67.     The persons described above aided and abetted by each other, their agents, employees and others, associated themselves with the enterprise described as Enterprise II through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(b) as described.

68.     Those specific acts included racketeering and conspiracy are of an ongoing nature continuing into future.

69.     As a direct and proximate result of RICO violations of 18 U.S.C. § 1962(b) by the Defendants, the Plaintiffs have been injured in its business or property, suffering damages in an amount to be determined at trial.

70.     The damages to Mr. Kwon and his companies include, but are not limited to, loss of equities exceeding $4 million dollars when the first payoff was demanded, and other income that the plaintiffs would have earned in the absence of Defendants' unlawful conduct; other lost business opportunities; and attorneys' fees and costs, including attorneys' fees and costs associated with exposing and pursuing redress for Defendants' criminal activities.

71.     Pursuant to the civil remedy provisions of 18 U.S.C. § 1964(c), the Plaintiffs are thereby entitled to recover treble damages, together with the costs of this suit and reasonable attorneys' fees.

### COUNT III
### RICO--VIOLATION OF 18 U.S.C. § 1962 (d)

72.     Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

73.     Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, and agreed together and with others to violate 18 U.S.C. § 1962(b) and (c) as described above, in violation of 18 U.S.C. § 1962(d).

74.     By and through each of the Defendants' close business and employment relationships with one another, and their close coordination with one another in the affairs of Enterprise 1 and Enterprise II described above, each Defendant knew the nature of these enterprises and each Defendant knew that these enterprises extended beyond each Defendant's individual role. Moreover, through the same connections and coordination, each Defendant knew that the other Defendants were engaged in a conspiracy to commit predicate acts, including those set forth above, and that the predicate acts were part of a pattern of racketeering activity, and each agreed to pursue the same criminal objective.

75.     Each Defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the affairs of the Enterprise I and associated with Enterprise II, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

76.     In particular, each Defendant was a knowing, willing, and active participant in one or more such Enterprises and their affairs, and each of the Defendants shared a common purpose, namely, the orchestration, planning, perpetuation, and execution of the scheme to victimize Kwon and rob

him  of his Real Properties.    Further evidence of an agreement among the Defendants is particularly within the knowledge and control of the Defendants

77.    The participation and agreement of each of the Defendants was necessary to allow the commission of this pattern of racketeering activity.

78.    Mr. Kwon and the other Plaintiffs have been and will continue to be injured in their business and property by reason of the Defendants' violations of 18 U.S.C. § 1962(d), in an amount to be determined at trial. The injuries to Mr. Kwon directly, proximately, and reasonably foreseeably resulting from or caused by these violations of 18 U.S.C. § 1962(d) include, but are not limited to retention of $4million equity, business opportunities etc. that Mr. Kwon would have earned in the absence of Defendants' unlawful conduct; other lost business opportunities; and attorneys' fees and costs, including attorneys' fees and costs associated with exposing and pursuing redress for Defendants' criminal activities.

79.     Pursuant to the civil remedy provisions of 18 U.S.C. § 1964(c), the plaintiffs are thereby entitled to recover treble damages, together with the costs of this suit and reasonable attorneys' fees.

## COUNT IV
## BREACH OF IMPLIED COVENANNT OF GOOD FAITH AND FAIR DELAING

80.    Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

81.    There is no doubt in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing.

82.    There was implied in written Agreement and related loan documents between the lender Emerald and plaintiffs a covenant of good faith and fair dealing whereby the Lender impliedly

covenant that it would be in good faith and in the exercise of fair dealing with Mr. Kwon fairly and honestly and do nothing to impair, interfere with, hinder or potentially injure Mr. Kwon rights. And that such undertaking was taken over by Defendants, as assignee of the impugned Loan.

83.    As alleged herein, the Defendants breached the covenant by its acts including but not limited to the acts set forth in paragraph above, wherein the Defendants prevented the pay off the loan amount and deterred the plaintiff from retaining its property interest and to squeeze any possible penny equity from the Real Properties.

84.    The Plaintiffs were willing to perform all conditions, covenants and promises required by them on their part in accordance with the agreements with the original lender, which were waived or excused by the assignee Maverick misconduct.

85.    As a proximate result of the Defendant's breach of Agreement and related loan documents, the plaintiffs have been damaged in an amount to be proven at trial.

### COUNT V
### INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONSHIP

86.    Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

87.    Mr. Kwon clearly had a reasonable expectation of a business relationship with at least two parties, Ramin Abhoot and Gideon.  Mr. Kwon and these two parties wanted to set up a joint venture.

88.    The Defendants knew about the relationship and or its expectancy as both Mahtook and Gideon contacted the Defendants.

89.    The Defendants intentionally prevented the payoff of the mortgage by creating formidable numbers, as it did not want to lose the Real Properties that they had set themselves to take over.

90.    By misrepresenting or not representing the proper payoff, the defendants acted improperly.

91.    The Defendants aforesaid conduct caused the loss of relationship  and or the expectancy;

92.    The Defendants conduct caused the Plaintiffs damages for an amount to be determined at trial.

**COUNT VI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

93.    Plaintiffs incorporates all paragraphs of this Complaint as if fully set forth herein.

94.    Defendants conduct was extreme and outrageous and was intentional or done recklessly.

95.    These Real Properties are gift to Mr. Kwon from his father who had maintained and preserved them for long. Mr. Kwon family besides deep  and emotional attachment had financial support from the said properties.

96.    Mr. Kwon made desperate attempts to get the authentic pay off statement from the Defendants, however to no avail as the Defendants themselves had decided to take over them. The Defendants knew that investors calling them on behalf of Mr. Kwon were genuinely interested in keeping the Real Properties to the family of Mr. Kwon and were ready to pay the right amount of pay off. However, the Defendants for dishonest reasons kept the payoff amount inflated to defeat any redemption.

97.    As a result of Defendants. conduct, Plaintiffs experienced and continues to experience severe emotional distress resulting in trauma.

98.    As a result of the above-described conduct, Plaintiffs has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological

treatment, therapy, and counseling.

WHEREFORE for this Count VI, Mr. Kwon prays for damages, treble damages, costs, interest, attorneys. fees and such other relief as the court deems appropriate and just.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays for relief and judgment as follows::

(a) General and compensatory damages according to proof at trial;

(b) Treble damages on all RICO claims pursuant to 18 U.S.C. § 1964(c);

(c) An award of Plaintiffs reasonable attorneys' fees and costs and expenses, pursuant to

18 U.S.C. § 1964(c);

(d) Punitive damages including voiding the Defendants claims, lien and mortgages on the Real Properties subject to this lawsuit;

(e) Judgement on all counts against Defendants severally and collectively.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 or Bankruptcy Rule 9015, Plaintiffs demands a trial by jury in this action of all issues so triable.

Dated: New York NY
August 11, 2020

Dahiya Law Offices, LLC
By:/s/*karamvirdahiya*
Karamvir Dahiya
75 Maiden Lane Suite 506
New York NY 10038
Tel: 212 766 8000

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK )

Chu H. Kwon, being duly sworn, hereby deposes and says the following:

I am the plaintiff and the operating member of the other plaintiffs limited liability companies in the above-entitled action. I have read the foregoing verified complaint and know the contents thereof; that the same is true to my knowledge, except as to the matters stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

_____
Chu H. Kwon

**Sworn to before me this day of**

**August 11, 2020**

_____
**Karamvir Dahiya Notary**